Filed 7/16/24 In re S.H. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.H., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B333723 (Super. Ct. No. 22JV00362) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES, Plaintiff and Respondent, v. T.L., Defendant and Appellant. | |

T.L. (mother) appeals from the orders of the juvenile court terminating her parental rights to her five-year-old daughter, S.H., and selecting adoption as the permanent plan. (Welf. &

Inst. Code, § 366.26.)[1]  Mother contends the juvenile court erred when it found she failed to prove the beneficial parent-child relationship exception to adoption.  We affirm.

*Facts and Procedural Background*

We incorporate by reference our prior nonpublished opinion denying mother's petition for extraordinary writ.  (*T.L. v. Superior Court* (Aug. 14, 2023, B326173) [nonpub. opn.]; see also *In re Bella L.* (May 13, 2024, B331973) [nonpub. opn.].)[2]  We summarize only those facts necessary to resolve this appeal.

In November 2022, Santa Barbara County Child Welfare Services (CWS) secured a protective custody warrant and detained four-year-old S.H. and her newborn baby sister Bella after Bella tested positive for amphetamine at birth.[3]  CWS filed a dependency petition alleging, among other things, Bella's positive drug test, mother's drug use, mother's "substantial" child welfare history, including the removal and subsequent adoptions of mother's two older children, and mother's criminal history.

In January 2023, at the contested jurisdiction and disposition hearing, the juvenile court found the allegations in the amended petition to be true, bypassed reunification services for mother, and granted mother supervised visitation with S.H.

By the six-month status review hearing, mother was receiving two hours of visitation with S.H. per month.  Although

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] On our own motion, we take judicial notice of our prior opinions and the record in the prior matters.  (See Evid. Code, §§ 452, subd. (d), 459.)

[3] Bella's status is not the subject of this appeal.

the visits "went well," the resource parents reported that S.H. had "a lot of anxiety" after visits with mother, including "tears and emotional dysregulation." It generally took "about a day or two for [S.H.] to become herself after visitation." The juvenile court adopted the department's recommended findings and orders and set the matter for a section 366.26 hearing.

In November 2023, the Court Appointed Special Advocate and the department each prepared reports, recommending the juvenile court terminate parental rights and select adoption as the permanent plan. The department reported that mother visited S.H. in July and October, but no visit occurred in August or September.[4] Mother arrived on time to the visits and brought snacks to share, books to read, and games to play. S.H. enjoyed the visits and cried when they ended. She clung to mother, and mother kissed and hugged her goodbye. S.H. continued to cry but stopped after she was comforted by resource mother.

In December 2023, the juvenile court conducted a contested section 366.26 hearing. The department social worker and mother testified. After listening to testimony and considering the evidence presented, the juvenile court found that S.H. was likely to be adopted and mother had not proven the parental-benefit exception applied. The juvenile court terminated mother's parental rights.

*Discussion*

Mother contends the juvenile court committed reversible error when it terminated her parental rights in light of the beneficial parent-child relationship S.H. shared with mother and the detriment severing that relationship would cause S.H.

---

[4] The department social worker testified that mother also had a visit in November 2023.

"'At a permanency plan hearing, the [juvenile] court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans.' [Citation.]" (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.) If the juvenile court finds that the child is adoptable, it must terminate parental rights unless a statutory exception applies. (§ 366.26, subd. (c)(1).)

One exception to this rule is the parental-benefit exception, which allows the juvenile court to avoid termination if it "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

To avoid termination of parental rights under this exception, a parent must show, by a preponderance of the evidence, three things: (1) regular visitation and contact with the child, (2) the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship, and (3) termination of the attachment would be detrimental to the child. "When the parent has met that burden, the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption." (*In re Caden C.* (2021) 11 Cal.5th 614, 636-637 (*Caden C.*).)

Our review of the juvenile court's ruling on whether the parental-benefit exception applies incorporates two standards of review. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-641.) We apply

4

the substantial evidence standard to the first two prongs of the exception and abuse of discretion to the third prong. (*Ibid.*)

Here, the juvenile court assumed, for purposes of its decision, that mother had regular visitation and contact with S.H., "although" the juvenile court opined, "it appears she hasn't." CWS disagrees with the juvenile court's assumption, noting that mother missed four out of 11 monthly visits. We need not determine whether mother satisfied this first element because her failure to satisfy the second and third elements is dispositive.

*Beneficial Relationship*

In determining whether the "'child would benefit from continuing the relationship,'" the focus is on the child. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The exception must be examined on a case-by-case basis, taking into account "a slew of factors" which affect a parent/child bond such as, "'[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Id.* at p. 632, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

Here, the juvenile court acknowledged that S.H. "knows who her mother is, likes her mother, loves her mother. She sees her, she runs to her, is happy, loves her, and cries when the visitation ends, but there's not much more to that relationship, and nothing there that would imply that the child would benefit from continuing that relationship over and above the permanency that adoption would confer on the child."

We agree. S.H. was only four years old when she was removed from mother's care. By the time of the section 366.26 hearing, S.H. had lived with her prospective adoptive parents for a little over one year. Although visits went "very well," and S.H. was happy and excited to see mother, S.H. suffered "a lot of

5

anxiety" and "emotional dysregulation" afterward. Additionally, the social worker testified there was no indication that S.H. asked for mother when visits were missed.

We conclude substantial evidence supports the juvenile court's finding as to this element.

*Detriment Caused by Termination*

"When [the juvenile court] weighs whether termination would be detrimental, . . . the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.) "'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

Here, the juvenile court properly weighed the benefits of adoption and found no evidence of detriment. As the juvenile court explained, "I cannot make a finding at this time on the basis of this evidence that there's a relationship the continuation of which would benefit the child; that it's a substantial emotional attachment, the termination of which would be detrimental to the child."

Indeed, the social worker testified that "no detriment exists in terminating parental rights" in this case. Rather, the department believed it would be "more detrimental" to continue the relationship with mother "in place of implementing a permanent plan of adoption."

To be sure, S.H. is "thriving" in her current placement with paternal aunt and uncle with whom she and Bella have lived since November 2022. S.H. looks to paternal aunt and uncle to

6

meet her needs and they are committed to adopting her. Although S.H. is too young to fully understand the complexity of adoption, when asked if she could live in one place forever, S.H. said she wanted to live with the prospective adoptive parents, whom she refers to as "mom and dad."

On this record, there was no abuse of discretion.

*Disposition*

The judgment (orders terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.

7

Gustavo Lavayen, Judge

Superior Court County of Santa Barbara

_____

Jesse Frederic Rodriguez, Giselle Marie Achecar, under appointment by the Court of Appeal, for Defendant and Appellant Rachel Van Mullem, County Counsel, Hudson N. Hornick, Deputy County Counsel, for Plaintiff and Respondent.